Good morning, Your Honors. Autumn McCullough on behalf of the appellant, Mr. Hugh Welcel. Your Honors, Mr. Welcel comes to this Court seeking your assistance in navigating the system to reach what can be the only just result in this case. This Court can ensure that result by first sifting through the technicalities of legal theories presented to find that Mr. Welcel was operating under a mistake of law when he signed the addendum to the real estate contract. Was this raised before the lower court? The mistake of law? Yes. Not under that particular theory. Isn't this a problem for you? Yes. However, we contend that all the evidence that was presented under the repugnancy theory in the lower court is the same as would be presented under mistake of law. And therefore, this Court could and can, and we request that they do, deal with it as a mistake of law. Well, how would we know it was a mistake of law? Here were sophisticated people entering into a fairly sophisticated business arrangement. Well, I think what doesn't come across clearly in the written pleadings is the intimate involvement that North American Title Insurance Company had in the signing of the addendum. It may appear that North American is a disinterested third party that was surprised by the signing of the addendum. That's not the case here. In fact, the addendum was signed in North American's offices, was notarized in North American's offices. They were very aware of what was going on. Well, is there any evidence in the record that they consented to the loss of their segregation rights? I believe that that's possible. I believe that there could have been undue influence placed on Mr. Wells, held by North American, to go ahead and sign the addendum releasing the seller. And North American's actions — Did you present that evidence at the motion of summary judgment to create a triable issue of fact as to duress a coercion? Was the evidence that North American was involved in the signing of the addendum? That North American influenced Mr. Wellsell. I mean, what Mr. Wellsell did here was very simple. He had a claim against the trust. He wanted to buy some more property from the trust. The trust wanted him to give up any claim that he had to the easement. He gave up the claim to the easement. He released the principal, and his guarantor, the surety, wants to be released also. It happens every day. Right. I understand that that would be simple. But the inclusion of the express language that states, nothing herein is intended to nor shall it result in release of buyer's claims or right to assert claims against the title company, which handled the escrow, North American, in this transaction, and which ensured buyer's title to the subject property and all easements benefiting the same. It doesn't say whether or not they would have a claim against the title insurance company after the release, does it? It's just that if there are any rights hanging around there, we're not releasing them. But as to the sophistication of the respective parties, Mr. Wellsell is relying on the assurances of North American to say that they will do what's necessary to perfect that easement. He has language included in the addendum that would further that belief that, in fact, his rights are protected, that he will, in fact, end up with the easement, whether that's through North American's efforts or his own, he will end up with an easement, and he wants to preserve his rights with North American that that, in fact, occurs. Did Mr. Wellsell ever seek a rescission with a trust based on his mistake of law claim? Not as of this date. No. And the property's been sold, right? That's correct. So there can't be rescission. There cannot be rescission of the purchase and sale contract, not easily, but there could be rescission of the addendum that releases the seller from liability on the easement. Judge White also concluded on an alternative basis that the property had suffered no diminution of value. What's your position on that? Our position on that is that the district court erred in relying almost entirely on evidence presented by North American. That is the testimony of the seller, Carlson, and of the subsequent buyer from Mr. Wellsell, Mr. Pittman, in finding that there was no diminution in value. Well, was that a disputed material fact so that summary judgment could not be granted on that basis? Absolutely. Mr. Wellsell did present evidence in the form of a statement by Ms. Corelli, who did not purchase the land solely because of the defective easement, and a statement by an appraiser stating that if the easement were not valid, there would be a diminution in value. It seems that the district court ignored that evidence entirely rather than their mandate, which is to view the evidence in the light most favorable to the nonmoving party, Mr. Wellsell. Under California law, is an offer on a piece of property admissible evidence as to its value? Under Section 813 of the Evidence Code? Ms. Corelli's offer goes beyond a mere offer in that she had $25,000 in escrow. This was not a sham. This was a binding contract for sale with a contingency. A binding contract for sale? Excuse me? Be admissible evidence on the value of the property under Section 813 of the Evidence Code? Or is only expert appraisement evidence admissible on that issue? Being that we do have the appraisal, that is evidence. I think that Ms. Corelli's statement in the form of summary judgment where evidence should be viewed in the light most favorable to the nonmoving party, that Ms. Corelli's statement could be taken under submission by the Court. Did the Tylench Men's Company object to the admission of Ms. Corelli's evidence? I don't know the answer to that, Your Honor. So being that there is an issue of material fact on the diminution of value, the fact that this was inappropriately dealt with on summary judgment, that in fact the evidence relied on as to superior access is factually inaccurate because there is evidence that both alternate access points were denied approval by the county for building permits. It shows that the district court did not view the evidence in the light most favorable to Wellsell, and therefore, it should be remanded so that all of that evidence could come in and that a decision could be made on the diminution of value. Also, that North American, because they were intimately involved in the signing of this contract, should take Mr. Wellsell's position as his indemnor and argue for the rescission of the addendum. If the Court has no further questions, I would like to reserve the remainder of my time to respond to North American's arguments. Thank you. Thank you. May it please the Court. My name is Michael Valuva. I'm here on behalf of the respondent North American Title, Marjorie Lee, Senior Counsel for North American, who is also present in the courtroom. First, I would like to address an issue which just came up this morning in the argument, which was the concept that North American, excuse me, either consented to or advised or influenced the decision to waive the any claims with respect to the Carlson Trust on the loss of the easement. There was no evidence presented at the motion for summary judgment on this issue, nor was it argued in the briefs. So we simply don't have a response to it because there's nothing in the record to reflect any or support any such argument of that sort. There are really two issues before the Court. Number one, which is an issue of law fundamentally, which is whether the addendum executed by Mr. Wellsell forever waived the subrogation rights of North American. There is no contested evidence on this issue. He fully intended to release the Carlson Trust from any claims arising from the easement. A North American was not a party to that addendum. And the fact remains that rescindability is not a ground to obviate the effect of that If it were, many of us would be able to make arguments about the rescindability of contracts. It's merely a legal argument, a legal position. Rescission, in fact, is impossible. Well, there was never any demand for rescission, was there? No. In fact, there wasn't. That's the problem. In fact, one of the facts which Judge White relied upon is the fact that despite knowledge of the loss of the easement rights, Mr. Wellsell proceeded to close escrow for exactly the same amount of money that he agreed to back the year before, which was relevant both on the waiver issue and on the loss issue. He made no effort whatsoever to either back off of the rescission, excuse me, of the to negotiate a diminished purchase price. He simply went through with it, even though he knew at that time that his prospective purchaser, Mr. Oliverity, was having problems with the, purportedly having problems with the fact that the easement was no longer available. So the easement claim against the trust would want to hold you to the easement claim. Yes. That's right. Now, I understand that there are many clauses in insurance contracts which are read against the insurer, but this is not one of them. And nor is it the insurer's obligation to play Don Quixote in jumping into the shoes of the insured and tilting at windmills by trying to rescind an agreement, which is neither severable from the entire purchase agreement. And after the insured has not only voluntarily closed his own deal with the seller, but he's gone on and he's sold the race. It's gone. So the concept that one can now go back to Carlson and say, you know, I'd really like to rescind that addendum, but we'll just leave everything else intact, is legally impossible. And, in fact, there's no evidence in the record that Mr. Carlson would even entertain such a concept. And as a matter of law, if you tried to sue the seller for the value of the easement so that you could pay it back to Mr. Wellsell, he'd show you the addendum and say, I was released by your principle. That's the way it works. It works for equitable subrogation. It works for contractual subrogation. The North American had no greater rights to claim any money for this easement than Mr. Wellsell. So when Mr. Wellsell executed the addendum, North American was history. It had no right to go against Mr. Carlson. You said you had a second issue? The loss issue. Thank you, Your Honor. Real briefly. The key here is the facts which Judge White relied upon to find the absence of loss was, first of all, there was a sale at a higher market sale at a higher purchase price a year and a half later. It is true under Overholzer that you measure the loss at the time of discovery. But nonetheless, this evidence raises an inference at the very minimum that the property did not suffer a diminution in value due to the loss of the easement. He noted the existence of other access to the property. He noted the fact that Mr. Wellsell did not request any renegotiation of the purchase price before the close of the second escrow after learning of the loss of the easement. In fact, he agreed to buy at the very same price. Weighed against all of this is an unconsummated contract by Mr. Oliverdi entered into before the close of the second escrow. Under California law, that is not competent evidence of value. Now, we're not saying there was an argument that we're arguing it's unenforceable. We're not arguing unenforceability. We're simply saying that it was not competent evidence to rise to the level to raise a triable issue of fact. People can go out and get all kinds of offers for their property in an attempt to set up damages. The fact is, under California law, you submit either qualified expert appraisal testimony. You can give an — an owner is qualified to give an opinion of value, of course. And you can rely upon market sales. Outside of that, there isn't any recognized valuation use. But even the market sales have to be considered by an expert to show that they're comparable, right? Just so. So you do have that issue. And we presented appraisal evidence. So we have all of that. Judge White simply had no choice in this matter. There simply wasn't substantial evidence to rise to the Celotex standard of summary judgment. And we aren't arguing marketability. I suppose that a frustrated sale could, under some circumstances, be evidence of the lack of marketability of the property. But that argument isn't being raised on appeal, and so we don't need to reach it. Unless the Court has any other questions, I think those are the two issues we wanted to discuss today. Thank you, sir. Rebuttal. Just briefly, Your Honors. I would just like to make the argument of — somewhat of a policy argument that North Americans should not be allowed to have their hand in influencing Mr. Wellsell's actions by drafting the easement in the first place, ensuring that easement, and presenting an addendum to him to be signed, releasing his underlying — the principal's underlying liabilities, and get to walk away scot-free. The very fact that the express language is included in the addendum, common sense dictates that Mr. Wellsell would believe that he was being protected by his insurance company, and that then they realized that they made a mistake. They spent some time putting forth effort, trying to perfect that easement, realized that they couldn't do it, and then brought — you know, some year and a half later denied Mr. Wellsell's claims. So — Well, I'm inclined to agree with you that title insurance companies today just consider themselves insurers and cut away risks. In the old days, when I first started practicing law, they thought they had an obligation to straighten out title, and they took a lot of care. So to that extent, I agree with you, but I'm not sure that that gives your client a remedy in this case. Thank you, Your Honor. Thank you, counsel. Thank you very much for your argument. The matter will stand submitted.
judges: B. Fletcher, Hawkins, Bea